No. 91-424

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

STEPHEN DALE CRIST,

        Defendant and Appellant.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          John E. Smith and Marcia M. Jacobson, Public
Defender's Office, Missoula, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
Carol Schmidt, Assistant Attorney General, Helena
Robert L. Deschamps, III, County Attorney,
Missoula, Montana

Submitted on Briefs: April 2, 1992

Decided: June 11, 1992

FILED

JUN 11 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

_____
      Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from the Fourth Judicial District, Missoula County. Defendant, Stephen Crist (Crist) appeals from a ruling of the District Court allowing evidence of 'other acts' to be admitted under Rule 404(b), M.R.Evid. Subsequently, a jury found Crist guilty of sexually assaulting 9 year old B.L. We reverse.

The issues for our review are:

I. Did the District Court err by admitting 'other acts' evidence to be presented to the jury through the testimony of Kathy Lamb?

II. Did the District Court err by denying Crist's request for psychological evaluation of the complaining witnesses by a qualified expert of Crist's choosing?

Crist was charged with three counts of sexual assault. In the first count he was charged for sexual contact without consent for touching 9 year old B.L. on the chest and in the vaginal area with his hand. Count two alleged that Crist sexually assaulted B.C., Crist's 8 year old son, by fondling his penis. Count three alleged Crist sexually assaulted J.L., a 14 year old baby sitter, by fondling her breasts.

The State, pursuant to the requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957, filed a 'Notice of Intent to Introduce Evidence of Other Acts' seeking to admit alleged incidents of sexual assault upon Kathy Lamb (Lamb). The notice provided that the State would seek to introduce evidence of 'other acts':

2

for the purpose of proving motive, intent, preparation, plan, knowledge, absence of mistake or accident, or any other permissible factor such as consciousness of guilt.

The State further provided that the evidence of 'other acts' expected to be presented consisted of the following:

> On or about the fall of 1984 the defendant touched the breast and legs of Kathy Lamb, d/o/b July 24, 1971, on approximately twelve different occasions. One time he showed her a pornographic magazine and on another occasion he gave her an alcoholic beverage and joked that he would get her drunk and then "take advantage" of her. Later the same night he tried to get her to dress in a nightgown. The touching all occurred when she was in bed and he entered the bedroom and reached under her covers.

The court allowed the evidence to be introduced and at trial Lamb testified to each of the prior acts as listed above. However, Lamb did not recall defendant having touched her breasts but did testify that on three or four occasions (rather than the 12 described in the notice) Crist had come into the room where she was sleeping (with B.L.), put his hand under her covers and rubbed her upper leg. Crist was only found guilty of the charges involving B.L.

Rule 404(b), M.R.Evid., provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b), M.R.Evid., must be strictly enforced, except where clearly justified and exceptions to the rule must be carefully limited. Just, 184 Mont. at 271-272, 602 P.2d at 962, citing State v. Tiedemann (1961), 139 Mont. 237, 242-243, 362 P.2d 529, 531. We have developed four substantive criterion for the admission of

3

evidence of other acts or crimes. State v. Just (1979), 184 Mont. 262, 602 P.2d 957; State v. Matt (1991), 814 P.2d 521, 48 St. Rep. 614. The so called 'Modified Just Rule' requires that:

> 1) there is a similarity between the crime charged and the previous crime, act or wrong;
>
> 2) the other crime, act or wrong must not be remote in time;
>
> 3) the evidence of other acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; and
>
> 4) a determination that the probative value of the evidence is not substantially outweighed by the prejudice to the defendant.

When reviewing evidentiary rulings, this Court will determine if the District Court misused or abused its discretion. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601. Absent a showing of abuse of discretion, the District Court's determination will not be overturned. State v. Oman (1985), 218 Mont. 260, 264, 707 P.2d 1117, 1119-20. On review, we will apply the Just criterion to the facts of the present case.

The first requirement of the Modified Just Rule is that there be a similarity between the crime charged and the prior act. Here the crime charged was the perpetration of sexual assaults upon an 8, 9 and 14 year old child. In State v. Tecca (1986), 220 Mont. 168, 714 P.2d 136, we held that a prior act need not be identical to the offense committed but that there must be a sufficient similarity. In Tecca, the crime charged was the sexual assault of

4

an 11 year old who was sleeping in the defendant's house. We determined that evidence of other children who had awakened in defendant's house to find defendant sitting next to their bed in his underwear bore sufficient similarity to the crime charged to uphold its admission. On the basis of Tecca, we refuse to adopt Crist's argument that a prior act in order to be admissible in a sexual assault case must involve actual 'touching'.

In State v. Long (1986), 223 Mont. 502, 726 P.2d 1364, we determined that defendant's having "rubbed" the clothed bottom of a 5 year old was sufficiently similar to the crime charged of pulling down the pants of two four year old children and rubbing their vaginas. We noted that sexual abuse of children takes subtle forms and deferred to the perceptions of the trier of fact to properly admit the testimony.

In the instant case, Lamb testified that Crist assaulted her late at night in the same bed in which Crist assaulted B.L. Lamb testified that Crist rubbed the inside and outside of her thighs in an attempt to "move his hand up." We conclude that this act is sufficiently similar to the assault perpetrated on B.L. to uphold its admission. See also State v. Gilpin (1988), 232 Mont. 56, 756 P.2d 445. We now apply Lamb's testimony, regarding Crist's touching her, to the remaining Just criterion.

Whether 'other acts' evidence is too remote is directed to the discretion of the District Court to determine whether a remoteness is so great that the proffered evidence has no value. Here, the acts about which Lamb testified appear to have occurred

5

approximately four years prior to the act against B.L. We have refused to establish an arbitrary time limit for admitting prior acts. Tecca, 220 Mont. at 173; State v. Medina (1990), 245 Mont. 25, 30, 798 P.2d 1032, 1036. In similar cases we have determined that remoteness does not bar admission where the intervening period of time is three and one half years, State v. Stroud (1984), 210 Mont. 58, 71, 683 P.2d 459, 466; five years, State v. Eiler (1988), 234 Mont. 38, 48, 762 P.2d 210, 217; and nine years where there has been a "continuing pattern of similar conduct." Tecca, 220 Mont. at 172.

We conclude that Lamb's testimony is not too remote and that the District Court acted within its discretion by allowing its admission. Furthermore, we conclude that Lamb's testimony regarding Crist's touching her tends to establish Crist's intent to commit sexual acts with minors, and therefore satisfies the third prong of the Just test.

The fourth prong of the Just test requires that the probative value of the evidence is not substantially outweighed by unfair prejudice to the defendant. We have clarified that unfair prejudice occurs when the evidence is offered to "horrify, evoke sympathy or increase a desire to punish and whose probative value is slight." State v. Paulson (1991), 817 P.2d 1137, 1144, 48 St.Rep. 838, 841. We again conclude the District Court acted within its discretion and uphold the admission of Lamb's testimony regarding Crist's touching her.

The remaining acts to which Lamb testified, we conclude, fail

6

to reach the requisite standard of sufficient similarity. Showing Lamb a pornographic magazine, teasing her about getting her drunk and "taking advantage of her," and attempting to get her to dress in a nightgown are innuendos too broad to meet the standard of similarity. We cannot say that these incidents are similar to the actual assaults with which Crist is charged. The record is void of Crist having ever acted similarly towards any of the alleged victims. Not inconsistent with Long, we continue to recognize that sexual abuse of children takes subtle forms. However, the 'other acts' admitted in the instant case cannot all be properly characterized as sexual abuse. These acts are, however, evidence of character. These innuendos would tend to distract the trier of fact from the main question of what actually happened on the occasions charged. Therefore, we conclude, with the exception of Crist's touching Lamb while she was in bed, Lamb's testimony lacks the requisite similarity to the crime charged and therefore fails the first prong of the Just test and is inadmissible character evidence. The District Court is reversed and the case remanded for a new trial.

Because we reverse, we need not address Crist's claim that the State failed to provide proper notice of which purpose the State intended to introduce the 'other acts' evidence. However, we reiterate our previous holding that the purposes listed in Rule 404(b), M.R.Evid., may not be listed in "shotgun" fashion but instead the notice must provide the specific purpose upon which a party intends to offer 'other acts' evidence. See State v. Croteau

7

(1991), 248 Mont. 403, 812 P.2d 1251.

Lastly, we turn to Crist's request to have the District Court compel a psychological evaluation of B.L. by an expert of his choosing. Contrary to Crist's contentions, no legal authority exists in Montana to compel a victim in a sexual assault case to be examined by a defendant's psychologist. State v. Liddell (1984), 211 Mont. 180, 685 P.2d 918. We addressed this issue in State v. Gilpin (1988), 232 Mont. 56, 756 P.2d 445, wherein we held:

> The defendant cannot force psychological evaluation of a
> child victim of sexual assault.

We are not persuaded by Crist's constitutional arguments that he is being denied his right to reciprocal discovery. We decline to hold that denial of a request to compel a psychological examination of a child sexual assault victim jeopardizes defendant's constitutional rights. We hold the District Court did not abuse its discretion by denying Crist's request to compel psychological evaluation of B.L.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

8

Chief Justice J. A. Turnage, dissenting:

I respectfully dissent from the majority opinion reversing the conviction of Stephen Dale Crist. Crist was found guilty on March 26, 1991, by a Missoula County jury of sexual assault upon a nine-year-old girl, B.L., committed between November 15, 1989, and January 31, 1990.

The majority opinion approves the admissibility of prior act testimony given at the trial by K.L., sister of B.L., that Crist sexually assaulted her in 1984 when K.L. was thirteen years old. Crist was not charged with this assault. I agree with the majority opinion's holding that this testimony of a prior act was admissible and that the requirements of the "modified Just rule" with relation to this prior act had been satisfied.

The majority opinion, however, reverses the conviction based upon testimony of K.L., that she was subjected to three other prior acts of Crist.

It must be noted that the three other prior acts, which the majority holds to be inadmissible and reversible error, all occurred within a short span of time before the prior act of sexual assault by Crist upon K.L. which the majority held to be admissible.

The testimony of K.L. relating to these three other prior acts, taken from the trial transcript of the direct testimony of K.L., is as follows:

Q. Were there any other incidents involving the Defendant that you can recall?

A. Yeah, I went over to the house one night, and I was sitting there and on the floor watching TV, and I don't remember how this started, but Steve said something like -- yeah, right in front of Collette he said, "Yeah, I'm going to --" I'm stumped. I can't remember.

He goes, "I'm going to get her drunk and take advantage of her," and Collette was sitting right there, and they just kind of laughed about it, and they go, "Well, we're going to bed now," and I said, "Okay."

And I was just watching TV. So Steve came back out a few minutes later, and he brought this nightgown out, and he goes, "Come here," and he grabs me and takes me into the bath-room, and he said, "Put this on," and I went, "No." Then he walked out and he got mad, and that was the end of it.

Q. Did anything else happen, either before or after this, involving the Defendant?

A. What do you mean?

Q. Did he ever pick you up at Sentinel High School or Hellgate High School?

A. Yes.

Q. Can you explain to the jury about that incident?

A. Well, I was at work, and I was at Human Resources, and I called up because I wanted to spend the day with [B.L.], my sister. So I called up, and I said, "Well, Steve, will you bring me over so I can see [B.L.]?" And he said, "Sure." He said, "There's something I want you to do, and I will pay you for it." And I said, "Okay." He goes, "Well, I will meet you at Hellgate." I did [sic], "Okay."

10

So he picked me up at Hellgate, and when I got in the truck, I go, "Well, what was it you wanted me to do?" He goes, "I'll just tell you later," and I go, "What, clean the house, clean dishes, some sewing?" And he goes, "No," and I go "Um." So he said, "I'll tell you when we get back to the house," and I go, "Okay."

So when we get back to the house, he was cleaning out the camper, either to go camping or just got back, and after that he goes, "Well, why don't you come in here and sit and talk to me," and I said, "Okay."

Q. In where?

A. In the camper -- because we never had any problems before this. We had always gotten along okay.

Q. So this incident with the camper was before he touched you?

A. This was before anything started. And so we were sitting in the camper just talking and everything. He said, "I want to show you something," and he said, "I will be right back." So he went in the house, came back in the camper, and he threw a magazine that was covered up on the table, and he went back in and he goes, "I'll be back in a minute." And so I uncovered it, and it was like a Penthouse or something like that.

Q. Then what happened?

A. He came back in and he goes, "What do you think?" [I] go, "What do you mean, what do I think?" And I went, "I don't think so." So I went in and kissed my sister and I left.

The majority opinion holds that the testimony of K.L. as to the three other prior acts fails to reach the requisite standard of

11

sufficient similarity and is only evidence of Crist's character. I disagree with this analysis.

The showing of a pornographic magazine to K.L., then a thirteen-year-old girl, stating that he was "going to get her [K.L.] drunk and take advantage of her" and telling her to take her clothes off and put on a nightgown are indeed subtle forms of grooming a child for an act of sexual abuse. The sexual assault to which K.L. testified Crist subjected her followed very closely after his three other acts grooming K.L. for the sexual assault that followed.

If, as the majority opinion holds, the actual sexual assault upon K.L. is admissible as a prior act of Crist, then certainly these other three prior acts are also admissible as a grooming of K.L. for the sexual assault upon her, and cannot be held as not similar. These acts of grooming of K.L. are not only similar to the actual sexual assault committed upon her but are a prelude and inextricably a part of Crist's plan and sexual assault.

Crist cannot complain that the admission of the testimony concerning the other three prior acts prejudiced him. He was charged in Count Two with sexual abuse against B.C., an eight-year-old boy, and the jury found him not guilty on this count. In Count Three, Crist was charged with sexual assault upon J.S., a fourteen-year-old girl, and the jury hung on this charge--eight for guilty and four for innocent. Count Three was thereafter dismissed.

12

I would affirm the jury conviction and sentence imposed by the District Court.

_____
Chief Justice

13

June 11, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John E. Smith
Public Defender's Office
317 Woody St.
Missoula, MT 59620

Marcia M. Jacobson
Public Defender's Office
317 Woody Street
Missoula, MT 59802

Hon. Marc Racicot, Attorney General
Carol Schmidt, Assistant Attorney General
Justice Building
Helena, MT 59620

Robert L. Deschamps, III
Missoula County Attorney
Missoula County Courthouse
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudor_
Deputy